O

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VITA C. F.,

        Plaintiff,

  v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]

        Defendant.

Case No. 5:18-cv-00119-KES

MEMORANDUM OPINION AND ORDER

**I.**

**BACKGROUND**

In June 2013, Ms. Vita C. F. ("Plaintiff") filed applications for widow's insurance benefits and supplemental security income ("SSI") benefits alleging disability commencing December 31, 2011. Administrative Record ("AR") 271-83.

On March 14, 2016, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified,

---

[1] Effective November 17, 2017, Ms. Berryhill's new title is "Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security."

as did a vocational expert ("VE"). AR 56-98.

On April 11, 2016, the ALJ issued a decision denying Plaintiff's applications. AR 25-42. The ALJ found that Plaintiff suffered from the medically determinable, severe impairments of "osteopenia, degenerative disc disease, non-insulin-dependent diabetes mellitus, osteoarthritis of the bilateral shoulders, and mild degenerative changes of the knees." AR 34. The ALJ further found that "the evidence of record documented a diagnosis of generalized anxiety disorder with treatment consisting of Xanax." AR 35. The ALJ concluded, however, that Plaintiff's anxiety disorder was non-severe because it "does not cause more than minimal limitation in [her] ability to perform basic mental work activities …." AR 34.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work.[2] AR 36. The RFC does not include any functional limitations based on Plaintiff's anxiety disorder. Id. As an educational limitation, the RFC recognized that Plaintiff cannot read or write English and can speak only a few words in English. Id.

---

[2] Although the ALJ characterized the finding as one that Plaintiff could perform light work, the ALJ imposed some limitations inconsistent with light work. The ALJ found that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, which is consistent with light work. AR 36, citing 20 C.F.R. §§ 404.1567(b) and 416.967(b). The ALJ also found that in an 8-hour work day, Plaintiff could sit for 6 hours and stand or walk for 2 hours, which is consistent with sedentary work. AR 36; 20 C.F.R. §§ 404.1567(a) and 416.967(a); Social Security Ruling ("SSR") 83-10 ("Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. … [A] job is [light work] when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs. … [T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour work day.").

Based on the RFC and the VE's testimony, the ALJ determined that Plaintiff could not perform her past relevant work as a home care provider, Dictionary of Occupational Titles ("DOT") 354.377-014, or domestic housekeeper, DOT 301.474-010.[3] AR 40. The ALJ found that by working as a home care provider, a semi-skilled occupation, Plaintiff acquired "communication skills and service skills." AR 41. The ALJ found that these job skills were transferable to work as a companion, DOT 309.677-010, a light, semi-skilled occupation. Based on her RFC and having transferable work skills, the ALJ found that Plaintiff could work as a companion. AR 42. After eroding the number of companion jobs available nationally by 50% to account for Plaintiff's inability to speak English, the ALJ found that 35,500 such positions existed in the national economy. AR 41. The ALJ concluded that Plaintiff was not disabled. AR 42.

## II.

## STANDARD OF REVIEW

### A.    The Sequential Evaluation Process.

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n. 5 (9th Cir. 1996). The first step asks whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step asks whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires

---

[3] Although the DOT categorizes these jobs as medium work, the ALJ found that they had been "performed at the light level by" Plaintiff. AR 40.

the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work; if so, the claimant is not disabled and the claim must be denied. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. Id. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n. 5; Drouin, 966 F.2d at 1257.

**B.    Review by the Court.**

A district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)).

To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

## III.

## ISSUES PRESENTED

The parties' briefing raises the following five issues:

Issue One: Whether a finding that Plaintiff has skills transferable to *one* occupation is legally insufficient under Lounsbury v. Barnhart, 468 F.3d 1111 (9th Cir. 2006).

Issue Two: Whether the ALJ erred in evaluating Plaintiff's subjective symptom testimony.

Issue Three: Whether the ALJ gave clear and convincing reasons for discrediting the opinions of treating physician, Dr. Lozano.

Issue Four: Whether the ALJ committed legal error in finding that Plaintiff has transferrable skills.

Issue Five: Whether the ALJ erred in determining Plaintiff's RFC.

(Dkt. 20, Joint Stipulation ["JS"] at 3-4.)

Because Plaintiff has demonstrated legal error in connection with Issue Four warranting a remand for further administrative proceedings, the Court does not reach all of the other issues. Issue One is also discussed below, however, because

it presents a legal issue that may arise again on remand.

## IV.

## DISCUSSION

A.     **ISSUE ONE: Alleged Lounsburry Error.**

    1.     **Summary of Lounsburry.**

Lounsburry applied for disability benefits when she was sixty-two years old. Lounsburry, 468 F.3d at 1112. The ALJ assessed an RFC for a reduced range of light work with postural limitations. Id. at 113. The VE testified that she could not do her past relevant work as a certified nurse's assistant because the work requires a medium exertional capacity. Id. The VE did find, however, that Lounsburry's past work was semi-skilled and involved skills transferable to other work. The VE initially identified four jobs that Lounsburry could do, but in response to interrogatories propounded by the ALJ, later eliminated all but one as requiring more than "very little [vocational] adjustment," pursuant to the requirements of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App. 2 ("the grids"), Rule 202.00(f). Id. The one remaining occupation was that of "companion." Id. Based on the VE's testimony, the ALJ found Lounsburry not disabled. Id.

On appeal, Lounsburry argued that the ALJ committed legal error because Rule 202.00(c) of the Medical-Vocational Guidelines, as applied to the ALJ's uncontested findings of fact, directs as a matter of law a determination that Lounsburry is disabled. The Ninth Circuit agreed. Id. at 1112.

The Ninth Circuit explained that the grids are applied at the fifth step of the sequential evaluation process and "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." Id. at 1114. The grids, however, may not be fully applicable where a claimant has non-exertional limitations, such as postural and manipulative limitations. Id. at 1115. The Ninth Circuit concluded, "Where a claimant suffers from both exertional and

non-exertional limitations, the ALJ must consult the grids first." Id. If the grids direct a finding of disability, then that finding must be accepted by the Secretary, but if the grids direct a finding of non-disability, then the claimant's non-exertional limitations must be examined separately. Id. at 1116.

Applying these rules to Lounsburry, the Ninth Circuit determined that she was disabled. As the Ninth Circuit explained:

> Because she has transferrable skills, Lounsburry's case is controlled by grid Rule 202.07, which generally directs a finding of "not disabled." However, the ALJ misapplied Rule 202.07 by failing to consider fully the effect of Rule 202.00(c). Footnote (2) to Rule 202.07 explicitly incorporates language from Rule 202.00(c) that expands the circumstances under which claimants with transferable skills can be found disabled. Rule 202.00(c) provides:

> > However, for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have *only skills that are not readily transferable to a significant range of semi-skilled or skilled work* that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work *warrant a finding of disabled*.

> (emphasis added)

Under Rule 202.00(c), although Lounsburry has some transferable skills, she will be disabled if those skills "are not readily transferable to a significant range of semi-skilled or skilled work." Thus, the specific issue we confront is the meaning of the phrase "significant range of work." The Commissioner takes the position

7

that the term "work" refers to individual *jobs*, and the phrase "significant range" only requires Lounsburry to adjust to other work existing in significant numbers in the national economy in one or more occupations. However, the term "work" under Rule 202.00(c) means distinct *occupations*, and "significant numbers" is no substitute for and cannot satisfy the plain language of Rule 202.00(c) requiring a "significant range of . . . work" (emphasis added).

Id. at 1116-17.

The Ninth Circuit concluded that "Lounsburry's skills would transfer to precisely one occupation at her residual functional capacity. One occupation does not constitute a significant range of work." Id. at 1117. The Ninth Circuit therefore held that "Rule 202.00(c) directs a finding of disability for Lounsburry." Id.

### 2. Analysis of Claimed Error.

Plaintiff argues that she is in the same position as Lounsburry. She is a person of advanced age who can no longer do her past relevant work. The VE testified that she has acquired job skills transferrable to only one occupation – companion. Since she does not have job skills transferrable to a significant range of work, Plaintiff argues that she "is disabled under Rule 202.06 of the Grids." (JS at 5.)

The Commissioner persuasively distinguishes Lounsburry by pointing out that in that case, the ALJ applied Grid Rule 202.07 (for persons of advanced age with a high school education and ability to do light work); this Rule contains the "footnote 2" that incorporates the key language from Rule 202.00(c) about skills transferrable to a "significant range" of work. (JS at 7-8.) In contrast, here the ALJ considered Grid Rule 202.03 (for persons of advanced age with limited education and ability to do light work). AR 42. In other words, because Plaintiff does not have a high school education, she falls under a different Grid Rule than

8

Lounsburry.[4]  Grid Rule 202.03, which applies to Plaintiff, does not contain

footnote 2, and thus it does not incorporate the key language from Rule 202.00(c)

requiring the identification of distinct occupations under Lounsburry.[5]  See

Tommasetti v. Astrue, 533 F.3d 1036, 1043-44 (9th Cir. 2008) (declining "to

extend Lounsburry's definition of 'significant range,' which pertains to a *light*

work analysis under Rule 202.00(c)" to a case "which involves a *sedentary* work

analysis under Rule 201.07" because a "plain reading of Rule 201.07 makes clear

that it is not augmented by Rule 202.00(c), the specific text which was the driving

consideration in Lounsburry").

Plaintiff cites to the Social Security Administration's Program Operations

Manual System ("POMS") addressing the Transferability of Skills Assessment

("TSA").  (JS at 10.)  POMS is the agency's internal operations manual.  The "law

is well established that unpublished internal policy statements are not binding law

that impose judicially enforceable duties on the ALJ or this Court; such agency

statements are entitled to respect but only to the extent that they have the power to

persuade."  Engel v. Colvin, No. 14-01989-JEM, 2015 U.S. Dist. LEXIS 144467,

---

[4] Had the ALJ considered Grid Rule 201.03 (for persons of advanced age with limited education and ability to do sedentary work), that rule would also have directed a finding of "not disabled" if Plaintiff had transferrable job skills. Footnote 1 to Grid Rule 201.03 refers to § 201.00(f) which provides, "In order to find transferability of skills to *skilled* sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." (Emphasis added.)  This footnote appears inapplicable where an ALJ finds transferability of skills to *semi-skilled* sedentary work, as the ALJ did in this case.

[5] Grid Rule 202.03 contains footnote 1 which says, "See 202.00(f)."  That section says, "For a finding of transferability of skills to light work for persons of advanced age who are closely approaching retirement age (age 60 or older), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry."  Because Plaintiff was not age 60 or older on the date of the ALJ's decision, footnote 1 appears irrelevant to Plaintiff.

9

at *13, 2015 WL 6453081 at *5 (C.D. Cal. Oct. 23, 2015) (citing <u>Lockwood v.</u>
<u>Comm'r Soc. Sec.</u>, 616 F.3d 1068, 1072-73 (9th Cir. 2010)).

Plaintiff argues that according to POMS DI 25015.017 , there must be "at least three occupations to which there must be transferable skills to find sufficient transferability." (JS at 10.)  In fact, POMS DI 25015.017 provides as follows:

> You *generally* must cite at least three occupations when documenting capacity for other types of work.  However, *you may cite fewer than three* if the occupation(s) provide enough jobs that clearly there are a significant number of jobs in the national economy within the cited occupation(s).

POMS DI 25015.017 § D (2016) (emphasis added).[6]  Thus, Plaintiff's citation to POMS DI 25015.017 is not persuasive and does not save her <u>Lounsburry</u> argument.

Finally, Plaintiff argues that the ALJ erred by referring to "occupations" in his written decision, and this showed that "the ALJ was aware that there had to be occupations, plural, not a single occupation." (JS at 6.)  Specifically, the ALJ wrote that the VE "testified that representative occupations such an individual could perform include companion."  AR 41.  In fact, the VE testified that the only job to which Plaintiff's skills would transfer was companion.  AR 75-76.  The ALJ's slight mischaracterization, however, was harmless error, because as discussed above, the ALJ was not required to identify more than one occupation to which Plaintiff's skills would transfer, so long as a significant number of companion positions existed in the national economy.

---

[6] The Court looks to the version of POMS in effect in 2016, when the ALJ rendered the decision in this matter.  Although POMS DI 25015.017 was amended in October 2018, the language quoted above did not change.

**B.    ISSUE FOUR: Plaintiff's Transferable Skills.**

    **1.    Summary of Relevant Administrative Proceedings.**

    At the March 2016 hearing, Plaintiff amended her alleged onset date to February 5, 2015, her fifty-fifth birthday, making Plaintiff a person of "advanced age" for purposes of applying the Social Security regulations.  AR 57; 20 C.F.R. § 404.1563(e). Regarding her most recent work, Plaintiff testified as follows:

    Q:    And were you working until February 2015?

    A:    Yes.

    Q:    What kind of work?

    A:    Cleaning.

    Q:    Cleaning houses, homes?

    A:    I was working with an old person.

    Q:    Okay.  Did you take care of that old person?

    A:    Yes, I forget a lot of things.

AR 58.  Plaintiff lived with her elderly employer for more than a year, and they spoke in Spanish.  AR 59.  Her job did not involve lifting him.  Id.  Her job involved "cleaning up and making his bed and cooking."  Id.  She also went grocery shopping for him "all the time."  Id.  She could walk to the grocery store, which was only a block and a half away.  AR 73.  In addition to shopping and housecleaning, she also did laundry.  AR 72.

    The ALJ asked Plaintiff about her social interactions with her employer, as follows:

    Q:    [W]hen you did that job were you also reading or being a companion to the person you were caring for?

    A:    No.

AR 74.

    The VE classified Plaintiff's past relevant work as home care provider, DOT 354.377-014 (listing for "home attendant" or "home health aide"), and domestic

housekeeper, DOT 301.474-010 (listing for "house worker, general" or "housekeeper, home").  AR 71.  Per the DOT, the core duties of a home care provider are as follows:

> Cares for elderly, convalescent, or handicapped persons in patient's home, performing any combination of following tasks: Changes bed linens, washes and irons patient's laundry, and cleans patient's quarters.  Purchases, prepares, and serves food for patient and other members of family, following special prescribed diets. Assists patients into and out of bed, automobile, or wheelchair, to lavatory, and up and down stairs.  Assists patient to dress, bathe, and groom self.  Massages patient and applies preparations and treatments, such as liniment or alcohol rubs and heat-lamp stimulation.  Administers prescribed oral medications under written direction of physician or as directed by home care nurse. Accompanies ambulatory patients outside home, serving as guide, companion, and aide.  Entertains patient, reads aloud, and plays cards or other games with patient.  Performs variety of miscellaneous duties as requested, such as obtaining household supplies and running errands.  May maintain records of services performed and of apparent condition of patient. May visit several households to provide daily health care to patients.

DOT 354.377-014.

> The core duties of a domestic housekeeper are as follows:

> Performs any combination of following duties to maintain private home clean and orderly, to cook and serve meals, and to render personal services to family members: Plans meals and purchases foodstuffs and household supplies.  Prepares and cooks vegetables, meats, and other foods according to employer's

instructions or following own methods. Serves meals and refreshments. Washes dishes and cleans silverware. Oversees activities of children, assisting them in dressing and bathing. Cleans furnishings, floors, and windows, using vacuum cleaner, mops, broom, cloths, and cleaning solutions. Changes linens and makes beds. Washes linens and other garments by hand or machine, and mends and irons clothing, linens, and other household articles, using hand iron or electric ironer. Answers telephone and doorbell. Feeds pets.

DOT 301.474-010.

The VE testified that although the DOT defines the home care provider job as medium work, Plaintiff performed it as light work. AR 73. The VE further testified that Plaintiff had acquired skills as a home care provider that would transfer over to work as a companion. AR 75-76. The DOT defines the core duties of a companion as follows:

Cares for elderly, handicapped, or convalescent persons: Attends to employer's personal needs. … Transacts social or business affairs. … Reads aloud, plays cards, or other games to entertain employer. Accompanies employer on trips and outings. May prepare and serve meals to employer.

DOT 309.677-010.

When Plaintiff's counsel asked the VE to identify the transferable skills, the VA testified that they were "social skills… her communication skills, her service skills in terms of guiding, listening, coordinating, assisting." AR 80. The VE clarified that "service skills" referred to "responding to [the employer's] request" and "communication skills" referred to "listening" and "interpreting things … that [the employer is] requesting." Id.

When counsel asked the VE how long it would take to learn these "service

skills" and "communication skills," the VE responded by identifying companion work as having a specific vocational preparation ("SVP") level of 3. AR 80-81. The VE may have meant to refer to home care provider or domestic housekeeper work, which are also rated SVP 3. DOT 354.377-014; DOT 301.474-010. A job's SVP refers to "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Bray v. Comm'r of SSA, 554 F.3d 1219, 1230 n.4 (9th Cir. 2009) (citing DOT). SVP 3 is defined as semi-skilled work and means "over 1 month up to and including 3 months." Id.

Based on the VE's testimony, the ALJ found that by working as a home care provider, Plaintiff had acquired transferrable "communication skills and service skills." AR 41. This finding was critical to the ALJ's finding that Plaintiff is not disabled, because when a person of advanced age is limited to sedentary or light work, the Commissioner "will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work … that you can do despite your impairment(s)." 20 C.F.R. § 404.1568(d)(4).

## 2. The Definition of Transferable Job Skills.

The regulations instruct the Commissioner to consider claimants "to have skills that can be used in other jobs, when the skilled or semi-skilled work activities [they] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1).

The regulations treat a "skill" as a specific and articulable learned ability. See 20 C.F.R. § 404.1565(a) (describing a skill as something a person "acquires"). Social Security Rule ("SSR") 82-41 provides a further gloss on transferability of skills. First, SSR 82-41 provides the following definition of a job "skill" that is potentially transferable:

A skill is knowledge of a work activity which requires the exercise of

14

significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

SSR 82-41, 1982 SSR LEXIS 34 at *4.[7]

Next, SSR 82-41 acknowledges that "advancing age" is an important factor "associated with transferability because ... advancing age decreases the possibility of making a successful vocational adjustment." Id. at *13.

Finally, SSR 82-41 requires the ALJ to make certain findings of fact in the written decision whenever "the issue of skills and their transferability must be decided." Id. at *19. Specifically, "when a finding is made that a claimant has transferable skills, the acquired skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the ... ALJ's decision." Id.

The Ninth Circuit has determined that the "specific findings on transferable skills" required by SSR 82-41 "are necessary even where the ALJ relies on the testimony of a VE." Bray v. Comm'r of SSA, 554 F.3d 1219, 1225 (9th Cir.

---

[7] POMS DI 25015.017 (2018), cited by Plaintiff, contrasts "skills" such as answering a multi-line phone, assembling equipment, or keeping a money drawer balanced using computers with "unskilled tasks" such as answering a standard telephone, basic driving ability, filing papers, greeting customers, basic food preparation, and routine money handling. See § C.2. These examples do not appear in the 2016 version of POMS DI 25015.071.

2009).  In <u>Bray</u>, a VE testified that while Ms. Bray could not return to her past work as an insurance underwriter or medical assistant, she had transferrable skills and could work as a file clerk.  <u>Id.</u> at 1223.  The ALJ accepted this testimony and found Ms. Bray was not disabled.  <u>Id.</u>

The Ninth Circuit found the ALJ's determination deficient in several respects.  First, the decision failed to identify the "particular skills" that Ms. Bray had acquired from her past work that would transfer to work as a file clerk.  While the VE had testified that Ms. Bray's past work would have "exposed her to computers, customer service, and possibly some data entry," that testimony was insufficient, because (1) it was impossible from the record to determine if the ALJ adopted that testimony, and (2) there was no discussion as to whether these technology-related skills were truly transferrable, given that Ms. Bray's past work had occurred fifteen years earlier.  <u>Id.</u> at 1224 (footnote omitted).  Second, the ALJ failed to make findings under Rule 201.00(f) concerning the degree of vocational adjustment required, as follows:

> Neither the ALJ's decision nor the VE's testimony addresses whether Bray — who was one month from turning 55 at the time of her hearing — would have to undergo more than minimal "vocational adjustment" to perform successfully the tasks required of a file clerk, general clerk, or sales clerk, or otherwise determined whether the skills required of an insurance underwriter are substantially similar to those required of a general, file, or sales clerk.

<u>Id.</u>  The Ninth Circuit remanded the case "so that the ALJ can further develop the record and make specific findings on whether Bray has transferable skills."  <u>Id.</u> at 1226.

In <u>Renner v. Heckler</u>, 786 F.2d 1421 (9th Cir. 1986), a VE testified that the claimant, a person of advanced age limited to sedentary work, had acquired the following skills from her past work: "dealing with and selling to the public,

handling cash, using a cash register, filling out credit card transactions, completing

receipts, inventorying and ordering, inspecting merchandise, answering telephones,

and figuring discounts." Id. at 1423. He opined that "several" of these skills were

transferable to work as a box office cashier, telephone operator, or motel clerk. Id.

The record, however, was "silent as to the amount of 'vocational adjustment'

required for Renner to transfer into them." Id. at 1424. The Ninth Circuit held that

because each new job identified by the VE "appears to require some adjustment to

new industries and work settings" and the VE "failed to demonstrate that Renner

would be able to perform these jobs with very little, if any, vocational adjustment,"

the ALJ's finding of transferable skills "constitutes legal error." Id. (citing Grid

Rule 201.00(f)).

### 3. Analysis of Claimed Errors.

Plaintiff argues that the "communication skills and service skills" identified

by the VE and ALJ are not job skills as defined by relevant Social Security

regulations. (JS at 29-30, 33.) Even if they were, Plaintiff argues that there is no

evidence that she acquired transferrable "communication skills and service skills"

by cooking, cleaning, and shopping for her elderly employer. (JS at 30, 32.) As a

result, Plaintiff argues, the ALJ's finding that Plaintiff could work as a companion

lacks the support of substantial evidence. (JS at 31.)

           a.     The "Communication Skills and Service Skills" Identified by

               the VE and ALJ Are Not Transferable Job Skills.

Again, the VE explained that "service skills" referred to "responding to [the

employer's] request" and "communication skills" referred to "listening" and

"interpreting things that [the employer is] requesting." AR 80. The "skills" being

described are merely language skills. In any job, even unskilled jobs, employees

must hear, understand, and carry out job instructions. These purported "skills" do

not go beyond carrying out of simple job duties, and no one would need to work

for 30 days or more to "acquire" them. Plaintiff's purported "skill" of being able

to hear and carry out instructions (in Spanish) does not distinguish Plaintiff from unskilled workers who might apply to work as a companion. Thus, Plaintiff's "service skills" and "communication skills" do not comport with the definition of "skills" in SSR 82-41 or the kinds of skills listed by the Ninth Circuit in Renner. See Wolfe v. Berryhill, No. 16-01211-KES, 2017 U.S. Dist. LEXIS 40760, at *16-17, 2017 WL 1074932, at *6 (C.D. Cal. Mar. 21, 2017) ("The term 'customer service' describes a broad category of work, not specific job activities/skills such as answering phones, researching customer complaints, processing returns, or interacting with the public."); Castle v. Colvin, No. 15-00113, 2017 U.S. Dist. LEXIS 145796, at *17, 2017 WL 3939362, at *5 (W.D.N.Y. Sep. 8, 2017) (holding that where "there was no testimony from the VE explaining what was included among plaintiff's 'customer service skills,' apart from possibly the ability to communicate with customers," the use of the term "'customer service skills' is simply too vague" to describe transferrable skills); Muehling v. Colvin, No. 12-013, 2013 U.S. Dist. LEXIS 41531, at *10, 2013 WL 1194078, at *4 (N.D. Tex. Mar. 6, 2013) ("It is unclear from the record exactly what entails a customer service skill or, more importantly, what there is about a 'customer service skill' that requires more than thirty days to learn and gives plaintiff a special advantage over other job applicants. It could be that customer service skills merely involve something as simple as listening to a customer, replying with an answer, and other activities that are part of day-to-day, basic human interaction.")

    b.  There Is Insufficient Evidence that Plaintiff Acquired Transferrable "Communication Skills and Service Skills."

  Plaintiff lived with her elderly employer and they interacted in Spanish. AR 59. The tasks she described performing, such as shopping and cleaning, would require little, if any, interaction between Plaintiff and her employer. There is no evidence in the record concerning how frequently Plaintiff spoke to her employer (or his family members) and how those conversations directed her duties (if at all).

"The claimant is in the best position to describe just what he or she did in PRW [past relevant work], how it was done, what exertion was involved, what skilled or semiskilled work activities were involved, etc. Neither an occupational title by itself nor a skeleton description is sufficient." SSR 82-41, 1982 SSR LEXIS 34 at *11.

Thus, even if one could define a set of "service and communication skills" that someone could acquire by working as a home care provider, there is insufficient evidence to support a finding that Plaintiff acquired such skills.

## C.   Remand for Further Proceedings is Appropriate.

When an ALJ errs in denying benefits, the Court generally has discretion to remand for further proceedings. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Here, remand for further proceedings is appropriate so that the ALJ can develop the record concerning Plaintiff's potentially transferrable job skills defined in a manner consistent with SSR 82-41 (or lack thereof) and the effect of new findings on Plaintiff's vocational prospects. On remand, the ALJ may also wish to consider Plaintiff's other claims of error.

The ALJ may also wish to revisit his RFC determination. The limiting effect of an impairment must be considered as part of an individual's RFC whether or not that impairment is classified as "severe" at step two of the sequential evaluation. 20 C.F.R. § 404.1545(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your [RFC]."). Here, the ALJ found that Plaintiff suffers from the medically determinable impairment of anxiety disorder that has been treated over several years with Xanax. AR 35. The ALJ concluded, however, that Plaintiff's anxiety disorder was non-severe because it "does not cause more than minimal limitation in [her] ability to perform basic mental work activities …." AR 34. In making this determination, the ALJ gave great weight to the opinions of consultative psychological examiner Dr. Anthony Benigno. AR 35. Per Dr. Benigno's psychological evaluation,

Plaintiff would have "mild difficulty" carrying out simple instructions, making simplistic work-related decisions without special supervision, complying with job safety rules, and responding to changes in a normal workplace setting.  AR 537.

The ALJ did not include any limitations in the RFC to account for these mild difficulties or the possible side effects of Xanax.  It is far from clear to the Court that a person with even mild difficulties in the basic functional areas discussed by Dr. Benigno could work as a companion, a position that requires caring for elderly, handicapped, or convalescent persons who may have dementia or other mental impairments.  It is also unclear how often Plaintiff takes Xanax, whether she can safely drive while taking Xanax, and if not, how that would affect her ability to work as a companion, given that the DOT describes such work as involving transacting social or business affairs for the employer and accompanying the employer on trips and outings.

## V.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered reversing the decision of the Commissioner and remanding for further proceedings consistent with this opinion.


DATED:  <u>November 05, 2018</u>

<u>_Karen E. Scott_</u>
KAREN E. SCOTT
United States Magistrate Judge